## McDowell National Bank v. Mulco Truck Sales & Service, Inc.

*P. Raymond Bartholomew,* for plaintiffs.
*Bernard Goldstone* and *John C. Reed,* for Sheriff.

STRANAHAN, *P. J.,* March 25, 1976—

## I. POUNDAGE CASES

There is no dispute with respect to the facts of the instant case. On December 1, 1975, the sheriff, pursuant to writs of execution issued in connection with mortgage foreclosure proceedings initiated by plaintiffs, exposed to sale certain realty of defendants. In each case, the appropriate plaintiff-mortgagee was the high bidder and acquired title rights in the mortgaged property.

Thereafter, pursuant to Pa. R.C.P. 3136(a), the sheriff filed proposed schedules of distribution in which his commissions, or poundage fees, were computed on the totals of the respective judgments. Pursuant to Rule 3136(d), plaintiffs filed written exceptions to these schedules with respect to these fees. This court then entered on the sheriff a series of rules to show cause why these exceptions should not be sustained.

Parenthetically, it should be noted that all times prior to December 1, 1975, the sheriff had computed his poundage fees solely on the amount bid by the high bidder.

The sheriff 's right to charge poundage is statutory in origin and necessarily depends upon the statute creating that right: Union National Bank of Mount Joy v. Saylor, 26 D. & C. 204 (Lancaster, 1936); The Peoples National Bank of Shippensburg v. Baker, 30 D. & C. 679 (Cumberland, 1937). In the instant case, the sheriff makes his claim under the Act of May 9, 1949, P.L. 927, sec. 1, as amended, 16 P.S. §11301(b), which provides, in relevant part:

"(b) For executing writs of execution, or any writ or order issued out of any court, requiring the levy and seizure of lands and tenements or selling the same according to law, the following items, to be paid by the plaintiffs or petitioners:

" . . .

"In addition, the sheriff shall charge and receive, as an official fee, a commission charge of two cents on every dollar, based upon the total amount bid for the property, whether paid to the sheriff or credited to the purchaser: Provided, that the amount of the same does not exceed one thousand dollars ($1000), in which case one-half cent (½¢) on every dollar in excess of this amount shall be charged in addition."

The question raised in the instant case is, what is the base upon which poundage fees are to be computed when the high bidder at an execution sale is the execution-plaintiff or other lien creditor?

Although there are no appellate court decisions on point, there are two lower court decisions addressed to this question: Concord-Liberty Savings & Loan Assn. v. NTC Properties, Inc., 5 Butler 310 (1972), and Pittsburgh National Bank v. General Housing Industries, Inc., 65 D. & C. 2d 175 (Northumberland, 1974).

These decisions, however, reach opposite conclusions as to the proper base upon which to compute poundage fees. As such, they reflect the positions advanced by the parties in the instant case.

In Concord-Liberty Savings & Loan Assn. v. NTC Properties, Inc., supra, the case relied upon by the sheriff, the court (per Keister, P. J., and Dillon, J., en banc) held that poundage could be computed on the total judgment or other lien of a purchasing lien creditor despite the fact that the creditor had been the successful bidder on only a nominal bid.

In reaching this conclusion, the court stressed that section 11301(b) must be read in conjunction with Rule 3133, which provides that the sheriff has a duty to accept the receipt of a purchasing lien creditor up to the amount of his lien. It determined that these two provisions, when read jointly, held the amount of credit allowed a purchasing lien creditor was fixed as the total of his lien. In short, the court resolved that the actual dollar amount bid was the base for calculating poundage only when the purchaser was a third party with no lien on the property and no agreement with a lien creditor as to the disposition of the property.

The court reinforced this conclusion by noting that section 11301(e) provided for poundage fees in the case of settlements or stays of execution sales whether the sums paid for the settlements or stays were paid to plaintiff or the sheriff or whether there was a compromise between plaintiff and defendant for a future payment. On the basis of this, the court reasoned that it would be anomalous, inconsistent and contrary to the purpose of the statute if a sheriff could potentially be

entitled to collect more on a settlement or stay than he could on a consummated sale.

On the other hand, the court (per Kivko, P. J.) in Pittsburgh National Bank, supra, the case upon which plaintiffs rely, held that where plaintiff on a writ of execution becomes the purchaser at a nominal bid, the sheriff is entitled to poundage only upon the amount bid, rather than the fair market value (or total judgment) of the property sold.

The court reasoned that the language of section 11301(b) was clear and unambiguous in setting up the bid price as the base upon which to compute fees. It resolved that any other construction of the language was artificial and not in keeping with the plain and obvious meaning of the language of the statute.

Before deciding the merits of these opposing positions, it is necessary to place the present poundage statute in the context of its historical roots, the Act of April 2, 1868, P. L. 3, the Act of June 12, 1878, P. L. 187, and the Act of July 11, 1901, P. L. 663.

Each of these statutes provided that the sheriffs were entitled to poundage only where money was received and paid in connection with a writ or in the case of one of the enumerated exceptions of the particular statute. Moreover, each of these statutes operated concurrently with the Act of April 20, 1846, P. L. 411, sec. 1, 12 P. S. §2511, suspended November 1, 1960, Rule 3241(50). That act provided that when the purchaser at a sheriff's sale was a lien creditor entitled to participate in a distribution of the proceeds of a sale, it was the duty of the sheriff to accept the receipt of the purchaser, with the provision that the sheriff could

demand and receive a sum from the proceeds of the sale to cover his legal costs.

The courts read each of these poundage statutes in conjunction with the Act of 1846 and determined that the acceptance of a lien creditor's receipt did not constitute "receiving and paying money." As such, they concluded that the sheriff was not entitled to collect a poundage fee when the purchaser at the execution sale was a lien creditor. For cases involving the Act of 1868—Zacharias v. Dougherty, 1 Just. L. R. 223 (1903); Act of 1878 — Miller v. Griffiths, 2 Co. Ct. 531 (Mercer, 1885); Act of 1901 — Nolan v. Wittenmyer et ux., 18 D. & C. 734 (Dauphin, 1932); Farmers & Merchants Trust Co. v. Brumback, 18 D. & C. 656 (Franklin, 1932); Nicer v. Davis, 17 D. & C. 16 (Erie, 1931); Alma Bldg. & Loan Assn. v. Kramer, 17 D. & C. 59 (Philadelphia, 1932); Dickson's Estate, for use, v. Lee, Executor, 24 Dist. R. 375 (Allegheny, 1915). It is clear then that the purpose underlying poundage is to compensate the sheriff for the trouble and risk involved in making an accounting of the proceeds realized in an execution sale.

After carefully reviewing the recent cases interpreting the present poundage statute and considering these in the context of the statute's historical roots, it is determined that the position advanced by the sheriff must be rejected because of an erroneous assumption at the heart of his theory. That is, while it is agreed that section 11301(b) must be read in conjunction with Rule 3133 (which substantially reenacted the provisions of the Act of 1846 after it was suspended by Rule 3241(50), 3 Goodrich-Amram §3133-1)), when the purchaser is a lien creditor, it is not agreed that the

amount of credit given a lien creditor is necessarily fixed as the total of the lien or judgment.

This is based on a number of reasons. First, as previously noted, the courts consistently held with respect to the statutes of 1868, 1878 and 1901, that the Act of 1846 precluded the sheriff from collecting poundage fees on any portion of the purchase price paid by the certificate or receipt of a lien creditor. To adopt the position espoused by the sheriff in the instant case would require this court to make a full 180-degree turn from the historical roots of the present statute.

Second, while the Acts of 1933 and 1949 explicitly provide for fees based on amounts credited to a purchasing lien creditor, there is nothing within the language of these acts which provides that the amount of credit is to be anything other than the amount bid by the creditor.

Similarly, there is nothing within the language of Rule 3133 which provides that the amount of credit is fixed as the total of the lien or judgment of the purchasing lien creditor. The sole purpose of this rule is to short circuit the unnecessary, and purely formal, mechanics of requiring a purchasing lien creditor to pay the sheriff the purchase price and then wait for its return by the sheriff after he deducts his costs: 3 Goodrich Amram sec. 3133-1; 4A Anderson Pa. Civ. Prac. §3133.2. Indeed, the only language within the rule which relates to the amount of the credit states that the sheriff is to accept a purchasing creditor's receipt "up to the amount of the proceeds [of the sale] to which he is entitled." It is submitted that this language not only sets up maximum limits on the amounts of credit from such receipts but also im-

plies that the credit can be less than the full amount of judgment.

Additionally, Rule 3136(b), dealing with the distribution of the proceeds of an execution sale, reinforces this interpretation of Rule 3133. Rule 3136(b) provides:

"When a receipt of the plaintiff or other lien creditor has been accepted on account of the purchase the schedule shall set forth his name and address, *the amount of his judgment or lien,* identifying it, and the *amount of credit claimed* and *allowed* upon the purchase price." (Emphasis supplied.)

In interpreting that rule, the authors of 3 Goodrich-Amram §3136(b) (1) state:

"In keeping with the basic design of Rule 3136, section (b) provides for adequate disclosure of the relevant facts as part of the sheriff's proposed schedule of distribution: the name and address of the purchaser whose receipt has been accepted, the amount of his lien and sufficient information to identify it. *The amount of credit given by the sheriff may or may not be identical with the amount of the lien; it may or may not be the same as the amount of credit claimed by the purchaser. All three figures must be provided by the sheriff.* With such data before him, the potential objector (exceptant is the term more frequently used) may determine whether there is a basis for filing exceptions and whether there might appear to be some practical advantage to be gained in doing so."

The language of the rule itself and this interpretation indicate that there is a possibility for a difference between the amount of credit and the total judgment or other lien of the purchasing creditor.

In addition, it is submitted that the provisions of section 11301(e) do not, as the sheriff and the court in Concord Liberty Savings & Loan Association suggest, create an anomalous situation which is inconsistent with the conclusion reached because section 11301(e) serves a dual remedial purpose. First it compensates the sheriff who has carried out the mechanics of the execution process and is prepared to proceed to completion only to find that the judgment creditors have decided to settle the judgment or stay the writ. Second, it deters creditors from using the mechanics of execution merely as a tool of leverage in bargaining with their debtor during the execution process.

When viewed in this light, it is determined that the purposes promoted by section 11301(e) are not inconsistent with the general purpose underlying poundage fees in general, but rather separate and independent.

As such, it is concluded that the position advanced by the sheriff is not only inconsistent with the historical roots of the present poundage statute but also inconsistent with the language and purpose of the very statutes and rules of civil procedure applicable when the execution sale purchaser is a lien creditor. On the other hand, it is concluded that the position of the judgment creditors is consistent with both these provisions and their historical roots so that the proper base upon which to compute poundage is the actual dollar amount bid.

## II. REALTY TRANSFER TAX CASES

Two issues are raised in the instant cases with respect to the realty transfer tax. The first is what is the base upon which realty transfer tax is computed on a sheriff's sale when the monetary value

of the conveyed property is greater than its highest assessed value but less than the judgment or other lien of the purchasing lien creditor? The second is whether the petitioners can challenge the tax base used by the Sheriff by means of exceptions to the Sheriff's proposed schedule of distribution.

It is provided in the Act of December 27, 1951, P. L. 1742, 72 P. S. §3285.1, and Regulation 301-1(a), (1967) 2 Pa. Tax Reporter (CCH) #56-514a, that the Sheriff is required to pay the realty transfer tax on a sheriff's sale out of the first moneys paid to him in connection with the sale. Additionally, 72 P. S. §3291(a) 1 provides that it is unlawful to make, execute, deliver, accept or present for recording or cause to be made, executed, delivered, accepted or presented for recording, any document without the full amount of tax thereon being duly paid.

The sheriff contends that in order to fulfill this duty and yet avoid any potential liability it is necessary that the tax be computed on the total judgment of the purchasing lien creditor rather than some other figure.

After carefully considering the relevant statutory provisions and the regulations promulgated by the Department of Revenue in connection therewith, it is determined that this contention is without merit. First, the language of Regulation 301.2(a) and (b), 2 Pa. Tax Reporter ¶56-514a, clearly and unambiguously sets forth the formula for calculating realty transfer taxes on judicial sales. It provides:

"2. Formula for Computing the Tax Base on Judicial Sales whichever is higher of:

"(a) Price bid plus undischarged liens or encumbrances, or

"(b) Amount of judgment, or other liens pursuant to which property is sold, plus all prior liens.

"*If the amount of the judgment or other lien(s) plus prior liens, is used, the base of the tax shall in no event exceed the monetary value of the property conveyed.*" (Emphasis supplied.)

Moreover, while it is recognized that the Sheriff is not an expert on property value, it is noted that the regulation prescribes a method by which such valuations can be made for purposes of calculating the tax. It states:

"In the event that there is the claim that the actual monetary value is less than the highest assessed value, or less than the judgment and/or the undischarged lien(s) the taxpayer must provide satisfactory proof to the Commonwealth before an adjustment can be made. Submit executed, duplicate copies of the Judicial Affidavit of Value (Form RCC-10-RT) appraisals of the subject premises, plus other pertinent information to the Bureau of County Collections, Department of Revenue, Harrisburg, Pennsylvania, for review and certification" ¶56-514a, ftn. 2 (1967).

In light of these provisions, it is determined that a sheriff can fulfill his duty under 72 P.S. §3285.1 as well as avoid any liability under 72 P.S. §3291(a)(1) by paying the realty transfer tax computed upon the monetary value of the property as evidenced by an appropriate affidavit of value. See also Ominsky, Adventures in the World of the Realty Transfer Tax — The Pennsylvania Experience, 44 Temple Law Quarterly 73 (Fall, 1970).

The sheriff contends as well that the procedure to challenge the tax assessment is prescribed by the statute and its correlative regulations and that

the exceptions filed to the sheriff's schedule of distribution is an inappropriate circumvention of that procedure. The practical effect of the sheriff's contention is that the petitioners are left with two options: First, they may pay the tax under protest and appeal through the proper administrative channels; second, they may withhold the tax and the recording of the deed until the Bureau of County Collections has made a determination of tax liability.

At 72 P.S. §3291.1 it sets forth the determination, redetermination and review procedure for cases involving the realty transfer tax. This provision, along with Regulation 500, 2 Pa. Tax Reporter ¶56-703, approves and reenacts the regulation previously promulgated by the Department of Revenue at 72 P.S. §§1101-1104. As outlined in Commonwealth v. Hitzelberger, 4190 Pa. 354, 214 A. 2d 223 (1965), these regulations provide:

1. That a departmental examination be made of all realty transfer documents (including under Regulation 500 Affidavits of Value) to ascertain whether the full amount of tax has been paid.

2. That in the event it is determined that such tax has not been fully paid, a determination be made of the amount of tax payable.

3. That notice by mail be given to all parties subject to the tax of this departmental action.

4. That a taxpayer may petition the department for a redetermination of the tax liability.

5. That the department give the taxpayer notice of its action on this redetermination.

6. That the taxpayer be offered the right to petition for a review of this departmental action by the Board of Finance and Revenue.

This procedure, as outlined above, indicates that both the legislature and the Department of Revenue have decided that the determination of tax base and tax liability is to be made by the Commonwealth after the sale is effected and the conveyance completed and recorded. It is a procedure initiated by the Commonwealth rather than the taxpayer. There is nothing within the provisions of the statute or regulations which indicates that the transfer to the purchasing judgment or other lien creditor is to be delayed pending an administrative determination of tax base and liability.

Moreover, it should be noted that the instant case would not be in the proper posture for this outlined procedure to proceed because there is no provision for a taxpayer to challenge an overpayment of the tax until there has been a determination letter issued by the department.

As such, it is concluded that this court may properly grant the petitioners the relief requested, although it is requested by exceptions to the sheriff's schedule of distribution.

## ORDER

And now, March 25, 1976, upon consideration of the exceptions filed by the McDowell National Bank and arguments of counsel, it is ordered that the exceptions be and are hereby sustained and that the sheriff is directed to revise the schedule of distribution to show the sum of $601.50 owing with respect to poundage and the sum of $2,500 owing with respect to realty transfer tax.